UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ARCHIE BUTCHER,

      Claimant,

v.                                                    CASE NO. 3:23-cv-110-MMH-SJH

SERVICE EMPLOYEES INT'L
INC. and INSURANCE CO. OF
THE STATE OF PENNSYLVANIA,
c/o AIG CLAIMS, INC.,

      Employer/Carrier,

and

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,

      Party-In-Interest.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the undersigned on the Amended Petition for Judicial

Review on Behalf of Petitioner/Claimant, Archie Butcher. Doc. 4. Claimant seeks

review of an August 29, 2022, Decision and Order, and a December 9, 2022, Order

denying reconsideration, of the Benefits Review Board ("BRB"), which affirmed the

Decision and Order of an Administrative Law Judge ("ALJ"), through which

Claimant was denied disability compensation and medical benefits under the

Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et*

*seq.*, as extended by the Defense Base Act ("DBA"), 42 U.S.C. § 1651, *et seq. See* Doc. 4; Doc. 11 at 6.[1] This case was referred for a Report and Recommendation regarding an appropriate resolution. Doc. 17. The matter is fully briefed. Docs. 11, 12, 13. The parties have also filed joint Stipulations of Fact, Doc. 24, and presented oral argument on November 18, 2024, Doc. 26. For the reasons herein, it is respectfully **recommended** that the BRB's decisions upholding the ALJ's decision be **affirmed**.

## I. Background

### a. Underlying Facts

The underlying facts in this case are not generally in dispute. Beginning on May 18, 2006, Claimant was employed by Employer as a recovery mechanic at Camp Taji, Iraq. Doc. 24 at ¶ 1. His duties included retrieving and repairing military equipment, loading them on trailers, and returning them to the military compound. *Id.* at ¶ 4. Claimant worked 12 hours per day, 7 days per week, sometimes working overtime. *Id.* at ¶ 5. Claimant was not injured in Iraq. *Id.* at ¶ 16. Rather, the injuries forming the basis of this action occurred in September 2008 while he was in Thailand on Interim Leave, also called Rest and Relaxation Leave ("R&R"). *Id.* at ¶¶ 6, 17; *see also* Doc. 11 at 6; Doc. 12 at 4.

Specifically, the applicable terms and conditions of Claimant's employment were set forth in his employment agreement and in Employer's statement of Policy for Interim Leave (R&R) for In Theater personnel. Doc. 24 at ¶ 3; Doc. 25-8 at 22-62.

---

[1] All citations are to the page number at the top, not the bottom, of filings in the record.

After 120 days of assignment and other specified intervals, Claimant was permitted to take R&R for a period of 10 paid days. Doc. 25-1 at 489; *see also* Doc. 25-8 at 23, 36, 51; Doc. 24 at ¶¶ 6-7. Employer provided R&R on a use-it-or-lose-it basis; if Claimant did not take his R&R, it would be forfeited. Doc. 25-1 at 484, 503; *see also* Doc. 25-8 at 22-23, 35-36, 51-52. When he used R&R, Employer provided transportation directly for Claimant to and from the Bagdad International Airport, and then to Dubai, where it paid for overnight lodging. Doc. 24 at ¶ 8. Claimant would then travel to his destination of choice, as he was free to "take R&R at any location in the world, except combat zones[.]" *Id.* at ¶¶ 6-7; *see also* Doc. 25-1 at 500-02.

Claimant was permitted to be reimbursed up to $860 by Employer for airfare to and from Dubai, but he was otherwise "responsible for his own costs during R&R, such as food, lodging, transportation and recreation." Doc. 24 at ¶¶ 9, 11; *see also* Doc. 25-1 at 498, 501. On R&R, Claimant was neither required to stay in contact with his supervisor nor subject to recall. Doc. 24 at ¶ 13; *see also* Doc. 25-1 at 497-98. Employer also placed no limitations on the recreational activities in which Claimant could engage in while on R&R. Doc. 24 at ¶ 12; *see also* Doc. 25-1 at 499, 502, 504. Claimant was not on duty and performed no work for Employer while on R&R, which was his "personal time" to relax. Doc. 24 at ¶ 15; Doc. 25-1 at 497, 504.

Claimant had twice previously taken R&R in Thailand in 2007. Doc. 24 at ¶ 14. Claimant took his third R&R in Thailand in September 2008. *Id.* at ¶ 17. Doing so was his personal decision. Doc. 25-1 at 500-01. He arrived in Thailand on September 21,

3

2008. Doc. 25-1 at 479. Two days later, he was taken to a hospital in Thailand due to an apparent moped accident[2] in which he suffered the injuries, including a skull fracture and traumatic brain injury, at issue in this action. Doc. 24 at ¶¶ 17-18.

### b. Administrative Proceedings

On October 22, 2020, the ALJ issued an Order and Decision Denying Benefits. Doc. 25-1 at 7-15. After summarizing the procedural history and relevant evidence, *id.* at 7-13, the ALJ made a series of findings of fact, *id.* at 13-15. Among other findings of fact, the ALJ found that (i) Employer permitted Claimant to take R&R, which was not required but was forfeited if unused; (ii) while on R&R Claimant was not subject to recall, did not conduct any business on behalf of Employer, and was not required to stay in contact with his supervisor; (iii) Claimant was entitled to reimbursement for airfare of up to $860 but was otherwise responsible for travel expenses as well as all costs incurred while on R&R; (iv) Claimant could have gone almost anywhere in the world but chose to use his R&R to travel to Thailand in September 2008, where he had gone on two prior occasions on R&R; and (v) when Claimant traveled to Thailand for R&R, Employer provided him travel to Dubai and an overnight stay in Dubai, from where he flew to Thailand via a commercial airline at his own expense (subject to the above-referenced airfare reimbursement allowance). *Id.* at 13-14.  None of these

---

[2] The ALJ cited evidence that Claimant's injuries may have occurred in a moped accident, *id.* at 11, but did not explicitly make a finding that is how Claimant was injured, *id.* at 13-15. The ALJ appears to have assumed, without deciding, Claimant was injured in a moped accident. *Id.* at 11. For purposes of this action, the parties stipulated that it could be so presumed. Doc. 27 at 71-74.

facts are disputed or challenged here. Doc. 27 at 24, 43. To the contrary, as set forth above, they are stipulated and supported by Claimant's own testimony. *See supra* Part I(a).

The ALJ then found, as another finding of fact (more on that below), that Claimant's "injuries did not arise out of or in the course of his employment with Employer, and are not subject to the Defense Base Act." Doc. 25-1 at 15. In so finding, the ALJ explained that Claimant's injuries did not occur in facilities or activities provided by Employer, but rather were incurred

> at a location a two-day trip and many thousands of miles away from the duty location, while Mr. Butcher was not connected to his employment; he was not required to keep in touch with Employer; he was not subject to recall; he was not expected to (and did not) perform any duties for Employer while he was on R&R; he paid his personal expenses in Thailand.

Doc. 25-1 at 15. Accordingly, the ALJ found this to be a case in which Claimant was "'so far from his employment and [was] so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment.'" *Id.* (quoting *O'Keeffe v. Smith, Hinchman & Grylls Assocs., Inc.*, 380 U.S. 359, 362 (1965)).[3] The ALJ further explained that accepting "Claimant's argument that the zone of special danger should apply to the circumstances of this case would be to expand it beyond recognition — it would

---

[3] The language from the beginning of the ALJ's quotation ("so far from his employment") does not actually appear in *Smith, Hinchman & Grylls*, but such language *is* in the original source (*O'Leary*), that was being quoted by *Smith, Hinchman & Grylls. See O'Leary v. Brown-Pac.-Maxon*, 340 U.S. 504, 507 (1951).

5

require a finding, for example, that if Claimant had returned to the United States on R&R and fallen down the stairs when he did, his injuries would be compensable. I have found no cases that extend the doctrine that far, and I decline to do so here." *Id.*

A divided BRB affirmed the ALJ's decision. Doc. 25 at 6-27. Claimant moved for reconsideration, which was denied. Doc. 25 at 4. Claimant then filed his petition and subsequent amended petition for judicial review with this Court. Docs. 1, 4.

## II.     Issue on Appeal

Claimant raises a single issue on appeal, arguing

**The ALJ's conclusion, adopted by the Benefits Review Board, that Butcher was not injured within the "zone of special danger" because his injury occurred far from employment and was so thoroughly disconnected from the service of the employer that it would be entirely unreasonable to say the injuries arose out of and in the course of employment, was contrary to law, irrational, and unsupported by substantial evidence.**

Doc. 11 at 18; *see also id.* at 13-14.

## III.     Standard of Review

"Congress enacted the LHWCA in 1927 to provide workers' compensation coverage to certain maritime employees[,]" and it "subsequently enacted the DBA in 1941 to extend the workers' compensation coverage of the LHWCA to employees working on air, military, and naval bases outside the continental United States." *ITT Base Servs. v. Hickson*, 155 F.3d 1272, 1274 (11th Cir. 1998).[4] The LHWCA "authorizes

---

[4] The DBA generally incorporates by reference the provisions of the LHWCA but provides that when a provision of the DBA modifies the LHWCA, the DBA controls. *See Adams v. Serv. Emps.*

payment of compensation for 'accidental injury or death arising out of and in the course of employment[.]'" *O'Leary v. Brown-Pac.-Maxon*, 340 U.S. 504, 506 (1951) (quoting 33 U.S.C. § 902(2)).

"Under the statutory provisions of the DBA and LHWCA, when liability for workers' compensation is controverted, the claim goes to an ALJ, who makes findings of fact and determines the validity of the claim." *Raytheon Engineers & Constructors, Inc. v. Sullivan*, No. 3:05-cv-474-J-32MMH, 2005 WL 3445519, at *1 (M.D. Fla. Dec. 14, 2005) (citing 33 U.S.C. § 919) (internal footnote omitted). The aggrieved party may appeal the ALJ's decision to the BRB, whose review is limited and does not include making independent findings of fact. *Id.* (citing 33 U.S.C. § 921). "'The findings of fact in the [ALJ's] decision under review by the [BRB] shall be conclusive if supported by substantial evidence in the record considered as a whole.'" *Id.* (citing 33 U.S.C. § 921(b)(3)); *see also Adams v. Serv. Emps. Int'l Inc.*, No. 3:14-cv-443-J-32MCR, 2016 WL 11563368, at *1 (M.D. Fla. Apr. 29, 2016), *report and recommendation adopted*, 2016 WL 11563369 (M.D. Fla. May 25, 2016).

The DBA and LHWCA also contain provisions for judicial review. *See Hickson*, 155 F.3d at 1274. The DBA provides for judicial review "in the 'judicial district wherein is located the office of the deputy commissioner whose compensation order is involved ... [or] in the judicial district nearest the base at which the injury or death

---

*Int'l Inc.*, No. 3:14-cv-443-J-32MCR, 2016 WL 11563368, at *1 n.2 (M.D. Fla. Apr. 29, 2016) (citing 42 U.S.C. § 1651(a) and *Hickson*, 155 F.3d at 1275), *report and recommendation adopted*, 2016 WL 11563369 (M.D. Fla. May 25, 2016).

occurs.'" *Id.* (quoting 42 U.S.C. § 1653(b)). Thus, review in this Court is proper here. *See* Doc. 25-1 at 16-21.

But such review is limited. *See Del Monte Fresh Produce v. Dir., OWCP*, 563 F.3d 1216, 1219 (11th Cir. 2009); *U.S. Steel Mining Co., LLC v. Dir., OWCP*, 386 F.3d 977, 984 (11th Cir. 2004). This Court is confined to considering "errors of law as well as to making certain that the [BRB] adhered to its statutory standard of review of factual determinations, which is whether the [ALJ's] findings of fact are supported by substantial evidence and consistent with the law." *See Adams*, 2016 WL 11563368, at *1 (quoting *Sullivan*, 2005 WL 3445519, at *1); *see also Del Monte Fresh Produce*, 563 F.3d at 1219; *Fulks v. Avondale Shipyards, Inc.*, 637 F.2d 1008, 1011 (5th Cir. 1981).[5] Where, as here, the BRB has upheld the ALJ's decision, that means "'this Court's limited review of the ALJ effectively cloaks the BRB's decision with the same deference to which the ALJ is entitled'" such that although the case comes for review from the BRB, the analysis begins by reviewing the ALJ's decision. *Triple Canopy, Inc. v. Ritzheimer*, No. 3:16-cv-739-J-32JBT, 2016 WL 7826705, at *1-2 (M.D. Fla. Dec. 16, 2016) (quoting *U.S. Steel Mining Co.,* 386 F.3d at 983-84); *see also Del Monte Fresh Produce*, 563 F.3d at 1219.

In that regard, federal courts and the BRB are bound by the same "deferential standard of review": "'Decisions of the ALJ are reviewable only as to whether they

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

are in accordance with law and supported by substantial evidence in light of the entire record." *U.S. Steel Mining Co.*, 386 F.3d at 984; *see also Del Monte Fresh Produce*, 563 F.3d at 1219; *Ritzheimer*, 2016 WL 7826705, at *1.[6]

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). Though requiring "'more than a mere scintilla'" of evidence, the threshold for this standard "is not high." *Id.* at 103. As the Supreme Court reminded not long ago, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*; *see also Del Monte Fresh Produce*, 563 F.3d at 1219 (explaining similarly in LHWCA case that "[s]ubstantial evidence is 'such relevant evidence as a reasonable

---

[6] The Eleventh Circuit and this Court have stated that an ALJ's factual findings must be accepted unless not supported by substantial evidence in the record as a whole. *See Del Monte Fresh Produce*, 563 F.3d at 1219; *U.S. Steel Mining Co.*, 386 F.3d at 984; *Ritzheimer*, 2016 WL 7826705, at *1; *Adams*, 2016 WL 11563368, at *1; *Sullivan*, 2005 WL 3445519, at *1. So has the Supreme Court. *See O'Leary*, 340 U.S. at 508. The Supreme Court has also stated, however, that such findings must be accepted unless irrational *or* unsupported by substantial evidence. *See Smith, Hinchman & Grylls*, 380 U.S. at 362. Courts, including the former Fifth Circuit, have at times implied when articulating the applicable standard that irrationality might be a separate basis from lack of substantial evidence for declining to follow an ALJ's findings of fact. *See, e.g.*, *Fulks*, 637 F.2d at 1011; *Ins. Co. of N. Am. v. O'Keeffe*, 368 F.2d 341, 342 (5th Cir. 1966). But in context, the Supreme Court's "irrational or" language appears not to be a separate test, but rather a shorthand equivalence of irrationality to the threshold for a lack of substantial evidence. *See Smith, Hinchman & Grylls*, 380 U.S. at 362 (citing *O'Leary*, 340 U.S. at 508). Such is consistent with the text of the LHWCA with respect to the BRB's review. *See* 33 U.S.C.A. § 921(b)(3); *see also Del Monte Fresh Produce*, 563 F.3d at 1219. Indeed, as discussed below, substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See Del Monte Fresh Produce*, 563 F.3d at 1219 (citation omitted); *U.S. Steel Mining Co.*, 386 F.3d at 984. At least in this case, I see no basis to determine that the ALJ's findings of fact were supported by substantial evidence (*i.e.*, such that a reasonable mind might accept to adequately support a conclusion), yet nevertheless irrational. Thus, to the extent required, I will review for rationality within the review for substantial evidence without separate discussion.

mind might accept as adequate to support a conclusion'") (quotation omitted));
*Ritzheimer*, 2016 WL 7826705, at *1 (same in DBA case).

Substantial evidence does not require a preponderance of the evidence. *See Flowers v. Comm'r, Soc. Sec. Admin.*, 97 F.4th 1300, 1309 (11th Cir. 2024);[7] *see also Ceres Marine Terminals, Inc. v. Dir., Off. of Workers' Comp. Programs, United States Dep't of Lab.*, 848 F.3d 115, 120 (4th Cir. 2016); *Ramsay Scarlett & Co. v. Dir., Off. of Workers' Comp. Programs*, 806 F.3d 327, 330 (5th Cir. 2015). So long as "the ALJ's decision clears the low evidentiary bar[,]" a reviewing court must affirm even if it "would have reached a different result and even if a preponderance of the evidence weighs against the" decision on review. *Flowers*, 97 F.4th at 1309. Nor may a reviewing court "'decide the facts anew, make credibility determinations, or re-weigh evidence.'" *Id.* at 1306 (citation omitted); *see also Fed. Marine Terminals, Inc. v. Dir., OWCP*, 651 F. App'x 912, 914 (11th Cir. 2016); *Del Monte Fresh Produce*, 563 F.3d at 1219.

The deferential substantial-evidence standard is not confined to pure findings of "fact." *See Fulks*, 637 F.2d at 1011. So long as "supported by the evidence and not inconsistent with the law, the administrative law judge's inference is conclusive" as well. *Id.* (quotation omitted). "That the facts may permit diverse inferences is immaterial. The administrative law judge alone is charged with the duty of selecting

---

[7] *Flowers* arose under the Social Security Act, not the LHWCA or DBA. But as discussed in *Biestek*, another Social Security Act case, the term of art "substantial evidence" is used throughout administrative law. *See Biestek*, 587 U.S. at 102. And, as discussed, the same substantial-evidence test in Social Security Act cases also applies in LHWCA and DBA cases. *See Del Monte Fresh Produce*, 563 F.3d at 1219; *Ritzheimer*, 2016 WL 7826705, at *1.

the inference which seems most reasonable and his choice, if supported by the evidence, may not be disturbed." *Id.* (quotation omitted); *see also Smith, Hinchman & Grylls*, 380 U.S. at 361-62.

### IV.    Discussion

#### a.    The Zone of Special Danger Doctrine

This case involves a single issue: review of the ALJ's finding, adopted by the BRB, that Claimant was not in the "zone of special danger" when injured. *See* Doc. 11 at 18; *see also id.* at 11, 13-14. The "zone of special danger" doctrine comes from the Supreme Court's *O'Leary* decision. *See Battelle Mem'l Inst. v. DiCecca*, 792 F.3d 214, 217 (1st Cir. 2015) (Souter, J.); *Ritzheimer*, 2016 WL 7826705, at *2. Like this case, *O'Leary* involved review of a compensation decision under the LHWCA, as extended by the DBA. *See O'Leary*, 340 U.S. at 505; *see also DiCecca*, 792 F.3d at 217. The issue was whether the death at issue was one "'arising out of and in the course of employment[.]'" *O'Leary*, 340 U.S. at 506 (quotation omitted).

The Supreme Court held that "[t]he test of recovery is not a causal relation between the nature of employment of the injured person and the accident. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer." *Id.* at 506-07 (internal citations omitted). Rather, "[a]ll that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose." *Id.* at 507; *see also Gondeck v. Pan Am. World Airways, Inc.*, 382 U.S. 25, 27 (1965); *Smith, Hinchman & Grylls*, 380 U.S. at 362.

The Court "drew the line only at cases where an employee had become 'so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment.'" *Smith, Hinchman & Grylls*, 380 U.S. at 362 (quoting *O'Leary*, 340 U.S. at 507); *see also Ritzheimer*, 2016 WL 7826705, at *2.

There is little precedent on the zone of special danger doctrine under the DBA. *See Ritzheimer*, 2016 WL 7826705, at *2. Apart from the above-referenced trilogy of Supreme Court cases (*O'Leary*; *Smith, Hinchman & Grylls*; and *Gondeck*), the last of which was in 1965, there is one former Fifth Circuit case from 1964, no published Eleventh Circuit cases, and little appellate law on the doctrine from other Circuits. *See id.*; *see also DiCecca*, 792 F.3d at 217.

Distilling what is available, however, three key concepts have emerged. *See Ritzheimer*, 2016 WL 7826705, at *2-3 (citing *DiCecca*, 792 F.3d at 220-21).

> First, the zone-of-special-danger doctrine under the DBA works an expansion of traditional employer liability to include coverage for injuries without any direct causal connection to an employee's particular job or to any immediate service for the employer. They must simply fall within foreseeable risks occasioned by or associated with the employment abroad. Although the requisite "special danger" covers risks peculiar to the foreign location or risks of greater magnitude than those encountered domestically, the zone also includes risks that might occur anywhere but in fact occur where the employee is injured. "Special" is best understood as "particular" but not necessarily "enhanced." There is a pale of cognizability, however, which stops short of astonishing risks "unreasonabl[y]" removed from employment. Thus administrative determinations have denied benefits, for example, for damages from cosmetic skin peels, and asphyxiation from auto-erotic practices.

Second, the determination of foreseeable risk is necessarily specific to context and thus turns on the totality of circumstances.

Third, and relatedly, in this corner of the law, the agency is given deference in applying the apposite doctrine to the particular case at hand. Accordingly, the agency's rational determination is treated as far as possible as a finding of fact, for which a reviewing court considers only whether the agency had a substantial basis in the record.

*Id.*

### b. Claimant Challenges a Finding of Fact by the ALJ that is Reviewed with Deference and Must be Affirmed if Supported by Substantial Evidence

This case is driven by the deferential standard of review applicable to agency factfinding and inference making. One might presume that application of uncontroverted facts to the zone of special danger doctrine would be a question of law, subject to stricter review. But that is not so. In *O'Leary*, the Supreme Court noted that the Deputy Commissioner[8] had "treated the question whether the particular rescue attempt [resulting in the death at issue] described by the evidence was one of the class covered by the Act as a question of 'fact.'" *O'Leary*, 340 U.S. at 507. The Court then explained:

Doing so only serves to illustrate once more the variety of ascertainments covered by the blanket term "fact." Here of course it does not connote a simple, external, physical event as to which there is conflicting testimony. The conclusion concerns a combination of happenings and the inferences drawn from them. In part at least, the inferences presuppose applicable standards for assessing the simple, external facts. Yet the standards are

_____

[8] Prior to 1972, the Deputy Commissioner made orders that were then subject to judicial review. Following 1972 amendments, contested claims are now heard by an ALJ, subject to review from the BRB and then judicial review. *See Ne. Marine Terminal Co. v. Caputo*, 432 U.S. 249, 254 n.3 (1977); *New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031, 1039 n.12 (5th Cir. Unit A 1981).

> not so severable from the experience of industry nor of such a nature as to be peculiarly appropriate for independent judicial ascertainment as "questions of law."

*Id.* at 507-08. As such, whether an injury fell within the zone of special danger was subject to the deferential substantial-evidence review. *Id.* at 508. In determining that substantial evidence supported the Deputy Commissioner's finding that the death at issue arose within the zone of special danger and was covered, such that the Court of Appeals had erred by reversing it, the Supreme Court explained "[w]e do not mean that the evidence compelled this inference; we do not suggest that had the Deputy Commissioner decided against the claimant, a court would have been justified in disturbing his conclusion." *O'Leary*, 340 U.S. at 508-09.

As the former Fifth Circuit explained, in *O'Leary* "the Supreme Court 'seemingly went out of its way' to point out" that the determination that the death at issue arose out of and in the course of employment was treated as "a finding of 'fact[.]'" *O'Keeffe v. Pan Am. World Airways, Inc.*, 338 F.2d 319, 324 (5th Cir. 1964); *see also DiCecca*, 792 F.3d at 218. Following the Supreme Court's lead, the former Fifth Circuit held in *Pan Am. World Airways* that the district court had erred by setting aside a Deputy Commissioner's application of the zone of special danger doctrine because "substantial evidence and fair inferences support the Deputy Commissioner's findings and require reinstatement of his order." *Pan Am. World Airways*, 338 F.2d at 320-21, 324.

In *Smith, Hinchman & Grylls*, the Supreme Court reiterated the narrow limits of "the scope of judicial review of the Deputy Commissioner's determination that a 'particular injury arose out of and in the course of employment.'" *Smith, Hinchman & Grylls*, 380 U.S. at 361. As the Supreme Court explained:

> "It matters not that the basic facts from which the Deputy Commissioner draws this inference are undisputed rather than controverted. It is likewise immaterial that the facts permit the drawing of diverse inferences. The Deputy Commissioner alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court. Moreover, the fact that the inference of the type here made by the Deputy Commissioner involves an application of a broad statutory term or phrase to a specific set of facts gives rise to no greater scope of judicial review."

*Id.* at 361-62 (quotation omitted and internal ellipses omitted). Indeed, in that case, the Deputy Commissioner had applied *O'Leary*'s zone of special danger doctrine to a *stipulated* and thus undisputed factual record. *Id.* at 360, 363. In agreeing "'that the District Court correctly affirmed the finding of the Deputy Commissioner[,]'" and that the Court of Appeals had erred by reversing, the Supreme Court noted that "[w]hile this Court may not have reached the same conclusion as the Deputy Commissioner, it cannot be said that his holding that the decedent's death, in a zone of danger, arose out of and in the course of his employment is irrational or without substantial evidence on the record as a whole." *Id.* at 363.

*Smith, Hinchman & Grylls* confirms the broad application of the deferential substantial-evidence standard. That deferential standard applies even where the reviewing court "may not have reached the same conclusion" as the agency

15

factfinder's "holding" in "applying" the zone of special danger "standard to the undisputed facts" to conclude whether an injury "arose out of and in the course of" employment. *Id.*; *see also DiCecca*, 792 F.3d at 219-21; *Ritzheimer*, 2016 WL 7826705, at *3.[9]

In *Gondeck*—the last precedential case to have applied the zone of special danger doctrine under the DBA—the Supreme Court again emphasized its "clear" directive "that the determinations of the Deputy Commissioner are subject only to limited judicial review[.]" *Gondeck*, 382 U.S. at 27. There, the district court had set aside the Deputy Commissioner's Order; the Court of Appeals affirmed the district court, but the Supreme Court reversed for reinstatement of the Deputy Commissioner's Order, finding the lower courts had exceeded their deferential review powers. *Id.* at 26-28.

In short, the zone of special danger doctrine under the DBA has reached the Supreme Court three times, has reached the former Fifth Circuit one additional time, and has never reached the Eleventh Circuit in a published opinion. In the four precedential cases, the factfinder's application of the doctrine stood (with the Supreme Court twice emphasizing it might not have reached the same result as a matter of first, rather than deferential, review). *See Gondeck*, 382 U.S. at 26-28; *Smith, Hinchman &*

---

[9] As noted in *DiCecca*, among other criticisms, the *Smith, Hinchman & Grylls* "dissenters read the per curiam opinion as effectively holding that 'any decision made by a Deputy Commissioner must be upheld.'" *DiCecca*, 792 F.3d at 219-20 (quoting *Smith, Hinchman & Grylls*, 380 U.S. at 366 (Harlan, J., dissenting)). The majority responded that the dissent's "criticisms were inconsistent with the 'limited judicial review' available under the statute" adding "that 'this type of determination, depending as it does on an analysis of the many factors involved in the area of the employment, would seem to be one peculiarly for the Deputy Commissioner.'" *Id.* at 220 (quoting *Smith, Hinchman & Grylls*, 380 U.S. at 364 (majority op.)).

*Grylls*, 380 U.S. at 363; *O'Leary*, 340 U.S. at 508-09; *Pan Am. World Airways*, 338 F.2d at 320-21, 324. On its occasion to apply the zone of special danger doctrine under the DBA, this Court has likewise deferred to the ALJ's determination. *See Ritzheimer*, 2016 WL 7826705, at *4 (explaining deferential standard of review requires "the Court must affirm even if it may not have reached the same decision as the agency" so long as the ALJ's decision is in accordance with the law and supported by substantial evidence).

### c.  Substantial Evidence Supports the ALJ's Decision

Applying the requisite deferential standard of review, the ALJ's determination clears the low evidentiary bar of being supported by substantial evidence. *See Flowers*, 97 F.4th at 1309; *Del Monte Fresh Produce*, 563 F.3d at 1219; *Ritzheimer*, 2016 WL 7826705, at *1. As the ALJ found, and there is no dispute, Claimant: (i) was allowed but not required by Employer to take R&R; (ii) was not on duty while taking R&R; (iii) was not subject to call back or required to check in while on R&R; (iv) was not subject to any control or restrictions by Employer as to his activities while on R&R; (v) could have gone anywhere other than a combat zone, including the United States, while on R&R; (vi) did not need Employer's permission in deciding where to go or what to do on R&R; (vii) paid his own personal expenses on R&R, for activities that were not provided by Employer; (viii) was not required while on R&R to tell Employer what activities he chose to engage in; and (ix) was injured while on R&R in Thailand, thousands of miles away from his station in Iraq, while on his own personal time and engaged in activities not part of Employer's business. Doc. 25-1 at 13-15.

17

The ALJ ultimately concluded Claimant's injuries were outside the zone of special danger, that is that they were so far from his employment and "'so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment.'" *Id.* at 15 (quoting *Smith, Hinchman & Grylls*, 380 U.S. at 362); *see also O'Leary*, 340 U.S. at 507; *Ritzheimer*, 2016 WL 7826705, at *2. A rational factfinder could accept the foregoing facts and the reasonable inferences therefrom as adequate to support such a conclusion, which means the ALJ's conclusion is supported by substantial evidence and must be affirmed. *See Del Monte Fresh Produce*, 563 F.3d at 1219; *Ritzheimer*, 2016 WL 7826705, at *1.

To be sure, a reasonable factfinder might have alternatively reached the opposite conclusion—that is, from the same facts and inferences therefrom, that Claimant's injuries arose from the zone of special danger and were compensable. But assuming so, that simply means that whichever of competing rational determinations the ALJ made must stand. *See Smith, Hinchman & Grylls*, 380 U.S. at 363; *O'Leary*, 340 U.S. at 508-09; *Ritzheimer*, 2016 WL 7826705, at *4.

The Supreme Court's decision in *Smith, Hinchman & Grylls*, 380 U.S. 359, is particularly instructive. There, the basic facts were stipulated and undisputed:

> The decedent had been hired in the United States under an oral contract the terms of which provided that he was to be transported to South Korea at his employer's expense, remain there for two years, and then, at his employer's expense, be transported back to the United States. The employer paid his rent and provided him with a per diem expense allowance for each day of the year, including weekends and holidays, to

18

> cover 'the necessary living expenditures in the Korean economy.' He worked on a '365 day per year basis … subject to call to the job site at any time.' He 'quite often' worked on Saturdays and Sundays and at other times outside the normal work day. The employer considered all its employees to be 'in the course of regular occupation from the time they leave the United States until their return.' The employer expected the decedent and its other employees to seek recreation away from the job site on weekends and holidays.

*Id.* at 360. The decedent died while boating on a South Korean lake during a Saturday outing. *Id.* at 359. The Deputy Commissioner found the death compensable under the DBA, but, after a district court affirmed, the Court of Appeals reversed. *See id.* at 360-61. The Supreme Court then reversed the Court of Appeals, holding the district court had correctly affirmed the Deputy Commissioner. *Id.* at 361, 363. The Supreme Court expressly noted that it might not have reached the same conclusion. *See id.* at 363 ("In this case, the Deputy Commissioner, applying the *Brown-Pacific-Maxon* standard to the undisputed facts, concluded 'that the accident and the subsequent death of the decedent arose out of and in the course of employment.' … We agree that the District Court correctly affirmed the finding of the Deputy Commissioner. While this Court may not have reached the same conclusion as the Deputy Commissioner, it cannot be said that his holding that the decedent's death, in a zone of danger, arose out of and in the course of his employment is irrational or without substantial evidence on the record as a whole."). Thus, per the Supreme Court, either conclusion was rational and supported by substantial evidence, requiring the factfinder's choice to be affirmed. *See id.*

This case is *less* connected to employment than *Smith, Hinchman & Grylls*, a case that could have gone either way and that the Supreme Court might have decided the other way in the first instance. For example, Claimant here was on R&R, unlike the claimant in *Smith, Hinchman & Grylls*.[10] Claimant here was injured in a country different than his job location, while conducting activities at his own expense, thousands of miles away, while off duty and not subject to recall. *Compare with id.* at 363-64 (explaining facts supporting compensability in *Smith, Hinchman & Grylls* included that the claimant while in Korea "was considered to be working on a 365-day-per-year basis, subject to call at the job site at any time, and quite often he worked Saturdays and Sundays and at other times outside the working day" such that his employer considered him to be "in the course of" his regular occupation from when he left the United States until he returned). Given that the more connected facts in *Smith, Hinchman & Grylls* would have allowed a rational determination either way, the ALJ's determination here was not irrational or lacking substantial evidence.

At oral argument, Claimant acknowledged that the Supreme Court has treated the issue presented in this case as one of fact, subject to deferential review for only substantial evidence. Doc. 27 at 37-39, 42-43. Claimant also acknowledged that all the *underlying* facts on which the ALJ relied to reach the *ultimate* factual determination that the injuries were outside the zone of special danger were accurate and supported.

---

[10] Reinforcing the deference owed to the ALJ here, Claimant acknowledged at oral argument that no court has apparently applied the zone of special danger doctrine to an employee on R&R or similar leave. Doc. 27 at 14-15.

*Id.* at 24, 43. Claimant's assignment of error is that such facts were "irrelevant." *See, e.g., id.* at 38-39, 43-46. I disagree. By discounting the undisputed facts on which the ALJ relied as "irrelevant" and pointing to more favorable evidence Claimant deems more "relevant," Claimant merely invites an impermissible reweighing of the evidence. *See Ritzheimer*, 2016 WL 7826705, at *4 ("Petitioners argue primarily that the ALJ's determination that the doctrine applies is not supported by substantial evidence because the ALJ relied on 'irrelevant' evidence regarding the weather and a grooming/hygiene requirement in Claimant's contract instead of 'relevant' evidence regarding Claimant's subjective reasons for showering …. Petitioners are essentially requesting that the evidence be re-weighed, *i.e.*, that some evidence be given more weight than the ALJ gave it and some less. … However, such re-weighing is inappropriate.").

Indeed, the ALJ discussed several of the factors present in *Smith, Hinchman & Grylls*, (correctly) found those factors absent here, and (reasonably) found that the accident at issue was not covered under the zone of special danger doctrine. *See Smith, Hinchman & Grylls*, 380 U.S. at 363-64; *see also* Doc. 25-1 at 13-15.

## V.    Conclusion

Accordingly, I respectfully **recommend** the Court enter an Order:

1.    **Affirming** the BRB's decisions upholding the ALJ's decision; and

2.    **Directing** the Clerk of Court to enter judgment accordingly and close the file.

## NOTICE TO PARTIES

"Within 14 days after being served with a copy of [a] recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations impacts the scope of review by a district judge and by an appellate court. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C); 11th Cir. R. 3-1. "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). "A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation ... waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions[.]" 11th Cir. R. 3-1.

**DONE AND ENTERED** in Jacksonville, Florida, on January 7, 2025.

Samuel J. Horovitz
United States Magistrate Judge

Copies to:

The Honorable Marica Morales Howard, United States District Judge

Counsel of Record